## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

J.P. MORGAN SECURITIES LLC,                                    PLAINTIFF

v.                                                    No. 3:22-cv-14-BJB

TIMOTHY CHAD LOGSDON,                                          DEFENDANT

### MEMORANDUM OPINION & ORDER

J.P. Morgan seeks a temporary restraining order enjoining its former employee, Timothy Logsdon, from disclosing confidential information and soliciting J.P. Morgan clients. TRO Motion (DN 3) at 2. During a hearing on the motion (DN 20), J.P. Morgan conceded that it lacked evidence that Logsdon was violating the non-disclosure provision. So the only dispute concerns Logsdon's agreement not to solicit J.P. Morgan clients for a year after leaving the firm. *See* Employment Agreement (DN 4-2) at 4 ¶ 9. Logsdon seems to agree that the non-solicitation provision binds him, and acknowledges speaking to numerous J.P. Morgan clients, at least some of whom have moved their assets from J.P. Morgan to Logsdon's new firm. *See* Response (DN 17) at 13–14; Logsdon Decl. (DN 17-1) ¶ 13. But Logsdon disagrees that any of his client communications, which he characterizes as informational and authorized by FINRA rules, qualify as solicitations under the agreement. *See* Response at 4–5.

Additionally, Logsdon contends J.P. Morgan hasn't pointed to any *admissible* evidence that these communications, however characterized, are ongoing and harmful, as required to support an emergency injunction. Logsdon leans hard on the text of Federal Rule of Evidence 1101 to argue that the second-hand reports contained in the affidavit of Sherry Carrico, a J.P. Morgan regional director, carry no weight. This is just hearsay, he contends, that would be inadmissible at trial. *See* Response at 8–11 & n.4.

Logsdon concedes that a long line of authority in this Circuit runs the other way, with trial judges repeatedly resting temporary injunctive relief on evidence that would not necessarily be admissible at trial.[*] And contrary to Logsdon's argument,

---

[*] *See, e.g., Strategic Mktg. Servs., LLC v. Skelton*, No. 3:17-cv-00231, 2017 WL 2221709, at *2 n.1 (W.D. Ky. May 19, 2017); *Muffley v. Jewish Hosp. & St. Mary's Healthcare, Inc.*, No. 3:12-mc-6, 2012 WL 1576143, at *7 n.3 (W.D. Ky. May 3, 2012) (considering hearsay statements for a preliminary injunction under § 10(j) of the National Labor Relations Act); *Bazzy Invs. v. City of Dearborn*, No. 16-cv-10879, 2018 WL 10962765, at *3 (E.D. Mich. Aug. 2, 2018) (collecting in-circuit cases); *Damon's Rests., Inc. v. Eileen K Inc.*, 461 F. Supp. 2d 607, 620–21 (S.D. Ohio 2006) (same).

nothing in the rule's text precludes this practice.  Rule 1101(d) contains an open-ended exception, providing that the Federal Rules of Evidence "do *not* apply to … (1) the court's determination … on a *preliminary question of fact* governing admissibility," or "(3) miscellaneous proceedings *such as*" a number of other non-merits proceedings (emphasis added). The Sixth Circuit, Logsdon notes, has reserved the question whether the Federal Rules of Evidence apply strictly in temporary-injunction proceedings, citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1230 n.4 (6th Cir. 1985).  *See* Response at 10.  But that footnote, while not squarely foreclosing Logsdon's argument, certainly casts doubt on it.  The opinion quoted Wright & Miller for the proposition that, in the emergency-injunction context, a "trial court should be allowed to give even inadmissible evidence some weight."  *DeLorean*, 755 F.2d at 1230 n.4 (quoting 11 *Federal Practice and Procedure* § 2949 (1973)).

Confronted with an open-ended Rule, a consistent line of precedent from this and other districts within the Circuit, and no contrary Sixth Circuit or Supreme Court authority, the Court declines to draw a new line insisting on only admissible evidence at the TRO stage.  Tossing customary practice overboard would require far more than the aggressive textual extrapolation Logsdon offers.

So the Court will consider J.P. Morgan's evidence, admissible or not, but assign it only the weight it deserves.  *See Strategic Mktg. Servs*, 2017 WL 2221709, at *2 n.1 (court may afford less weight to hearsay evidence).  J.P. Morgan alleges that Logsdon met with clients "upon joining BLVD," his new workplace, Carrico Decl. (DN 4) ¶ 7, in November 2021, ¶ 2, and solicited "at least two clients" during "the last week of December 2021," ¶ 4.  Logsdon has opposed this motion with evidence of his own: four clients who followed Logsdon denied that he ever solicited their business.  *See* DN 17-2 ¶ 4; DN 17-3 ¶ 5; DN 17-4 ¶ 3; DN 17-5 ¶¶ 2–3.  And Logsdon submitted his own affidavit attesting that he has not "solicited the business of any J.P. Morgan client." Logsdon Decl. ¶ 13.  While his lawyer was unwilling to commit that Logsdon was not currently and would not in the future solicit J.P. Morgan clients, counsel represented to the Court that he was not aware of any present or ongoing communications between Logsdon and (current) J.P. Morgan clients.

Serious doubt, therefore, exists regarding whether any ongoing harm justifies the extraordinary relief of a temporary restraining order.  *See Winter v. NRDC*, 555 U.S. 7, 24 (2008).  And the record before the Court fails to meet the usual prerequisites: (1) a strong likelihood of success on the merits, (2) irreparable injury without the injunction, (3) no substantial harm to others based on issuance of the order, and (4) a public interest in the issuance of the order.  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007).  Although on the current record J.P. Morgan's likelihood of success is questionable, the most significant concern implicates the second prong.  J.P. Morgan points to "at least ten" other clients whom it says Logsdon solicited, but it has not put forth any evidence to support its allegation of ongoing and harmful violation of the non-solicitation

2

agreement.  Carrico Supp. Decl. (DN 19-1) ¶ 3.  This does not mean that no such evidence exists, of course.  But if it does, the record doesn't make it apparent.  Based on the current and very preliminary record, therefore, the Court must deny J.P. Morgan's motion for a temporary restraining order (DN 3) for lack of evidence of ongoing or future solicitation of J.P. Morgan clients.

Mindful that the parties appear to agree that FINRA will eventually adjudicate this dispute, the Court encourages the parties to confer and submit a joint status report and proposed schedule for any necessary discovery and additional briefing in no more than 10 days.  This Order, to be clear, does not foreclose the possibility of a renewed request for relief based on a more robust evidentiary showing, should it materialize, which could satisfy Rule 65's requirements for an injunction or restraining order.